## No. 12,500.

HOUSE *v.* BOARD OF COUNTY COMMISSIONERS OF LARIMER COUNTY.

(300 Pac. 998)

Decided June 8, 1931.

Mr. H. A. ALPERT, Messrs. STOW & STOVER, for plaintiff in error.

Mr. WINTON M. AULT, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

E. B. HOUSE sued the board of county commissioners of Larimer county, Colorado, in the district court to recover $2,712.55 paid by him to the treasurer of Larimer county, Colorado. The complaint charged that the town of Berthoud wrongfully levied a special improvement (paving) tax against certain specific property, a portion of the right of way of the Colorado and Southern Railway Company, and, in the default of payment of same, the treasurer of Larimer county wrongfully sold the property to plaintiff for the sum sued for. A demurrer for want of facts was interposed and sustained. Plaintiff elected to stand on his complaint and judgment was entered dismissing the action, to review which this writ is prosecuted.

Plaintiff bases his right to recover upon section 7444, C. L. of 1921, which provides: "When, by mistake or wrongful act of the treasurer, clerk or assessor, or from

double assessment, land has been sold on which no tax was due at the time, the county shall hold the purchaser harmless by paying him the amount of the principal and interest, at the rate of eight per cent per annum; and the treasurer, clerk or assessor, as 'the case may be, and his sureties on his official bond, shall be liable to the county, from sales made through his mistake or misconduct.''

Chapter 180, section 6, Session Laws of 1923, provides for the method of assessment and collection of special improvement taxes for paving and grading purposes chargeable against or assessable to any railway company. It provides:

''* * * The assessment levied for the cost of said improvements chargeable to a railway company shall be first and perpetual prior lien against the entire franchise and property of the company, both within and without said district, but within the limits of the city or incorporated town where such improvement is made, on a parity with general taxes; and all the terms, conditions and provisions in this act contained relative to the collection of the amounts chargeable against property specially benefited, shall be applicable in the enforcement and collection of such assessment against such railway company, and the property of such railway company shall, in case of default in payment of such assessment, be sold as in cases of default in payment of general taxes levied thereon; but railway trackage shall not be considered or computed as assessable frontage in determining the sufficiency of petitions as herein provided.

''Section 7. In case of the improvement of any street or alley as hereinbefore provided, the cost of such improvement, or such part thereof as may be assessed against the property especially benefited, including the intersections of streets and alleys but excepting the share to be assessed against railway companies, may be assessed on land to a substantially equal depth from the street or alley improved, and its intersections, without regard to lot or land lines, on a frontage, zone or other

equitable basis, in accordance with benefits, as the same may be determined by the ordering authority.''

■■ From the foregoing, it appears that the proportionate amount of assessment which a railway company is required to pay for the cost of a special improvement for grading or paving is to be determined by the same method applicable to abutting property owners. Such assessment is against the railway company, and not its specific property within the improvement districts. The procedure upon default in payment of such an assessment by a railway company is the same as in default of the payment of its general taxes.

Sections 7466, 7467, 7468, 7469, C. L. of 1921, provide that the personal property of a railway company, including the rolling stock, may be distrained and sold for delinquent taxes.

Section 7475, C. L. of 1921, provides: ''The properties of railroad companies, telegraph and telephone companies, ditch companies, companies supplying water to cities and towns, tramway companies, city railway companies and other like properties, in their nature indivisible or which can not be divided without impairing the value thereof, shall not be divided or sold in separate parcels for the non-payment of taxes thereon, but shall be sold en masse; Provided, That if any person will pay the tax upon such properties for an undivided share or interest therein, such undivided share or interest shall be sold in lieu of the whole property.''

■ Thus, the collection of the special assessment here involved could only be made from the sale of the franchise and entire property of the railway company or its personal property. The real property of the railway company clearly being indivisible cannot be sold in separate parcels. *Dobbins v. C. & S. Ry. Co.*, 19 Colo. App. 257, 75 Pac. 156.

■ The town of Berthoud had no right to assess the specific property of the railway company for the im-

provement tax in question and the treasurer of Larimer county had no authority to advertise and sell the same.

It is urged by the defendant that section 7444, C. L. of 1921, supra, was not intended to cover special assessment taxes.

Section 26, chapter 180, Session Laws of 1923, page 638, provides: ''The county treasurer shall receive payment of all assessments appearing upon the assessment roll, with interest; and in case of default in the payment of any installment of principal or interest when due, shall advertise and sell any and all property concerning which such default is suffered, for the payment of the whole of the unpaid assessments thereon; and said advertisements and sales shall be made at the same time or times, in the same manner, under all the same conditions and penalties and with the same effect as are provided by general law for sales of real estate in default of payment of general taxes.''

This law amended section 9496, C. L. of 1921, by making it the absolute duty of the county treasurer to receive payments of assessment appearing on the assessment roll. Under this act, it is apparent that the effect to be given to a sale of property for special improvement taxes is the same as a sale for general taxes. This being true, section 7444 is here applicable. It is to be noted that this statute is general and comprehensive. The word ''tax'' may include a special improvement tax as well as a general tax. Nothing in the act limits its intendment to general taxes. We can conceive no good reason why the legislature would intend to authorize the return of money, illegally collected, in one instance and not the other.

If we were to hold as defendant contends that section 7444, C. L. of 1921, supra, was not intended to cover special improvement taxes, plaintiff would be without a remedy; the railroad company would have escaped the payment of such taxes at plaintiff's expense and the county would be protected in the receipt of money illegally col-

lected. Such construction, even if tenable, would promptly be rejected if another interpretation, reasonably possible, would result in affording a remedy and according justice.

The county treasurer of Larimer county, in his capacity as county treasurer, being the only person authorized to collect and having been paid the amount of the special assessment here involved, the county is liable for its return notwithstanding the fact that the money so received was turned over to the town of Berthoud. The complaint states a cause of action and the demurrer was improperly sustained.

The judgment is reversed and the cause remanded for further proceedings in harmony herewith.

MR. JUSTICE HILLIARD not participating.